LEMMON, Judge
(dissenting).
If the trial judge (prior to reopening the case) had determined on a credibility basis that the “oath of the mother, supported by proof of the cohabitation of the reputed father with her” (C.C. art. 210) should be rejected, this court could not have disturbed that factual finding, since there was sufficient evidence to support accepting Pinto’s evidence and rejecting Mrs. Gray’s conflicting evidence. However, the trial judge reopened the case for evidence regarding the conception of Mrs. Gray’s second child, and thereafter based his decision on a finding that Mrs. Gray had an “unlawful connection” after the birth of the first child. In my opinion there was insufficient evidence to support that factual finding.
The following dates and facts are pertinent:
April 30, 1969 — Mrs. Gray married her husband.[1]
June 6, 1969 — An obstetrician examined Mrs. Gray and recorded her last menstrual period as March 29 (presumably the starting date).[2] He observed that the size of her uterus was compatible with a six to seven weeks pregnancy. From the date of the last period, he calculated her projected delivery date as January 5, 1970, “give or take a week or ten days.”
November 29, 1969 — The child was born and placed in an incubator. The same doctor classified the child as “at least” four to five weeks premature and as much too heavy (five pounds, ten ounces) for a seven-month baby, which usually weighs three pounds to three pounds, ten ounces. He also observed that Mrs. Gray’s first child weighed seven pounds, nine ounces, and that if the second child had been born on the due date and had gained the average half pound per week during the last month of pregnancy, he would have weighed at birth approximately the same as the first child.
Thus, at the time of the doctor’s first examination (37 days after Mrs. Gray’s marriage), he estimated the date of conception to have been between 42 and 49 days earlier, or between April 19 and April 26. Since Mrs. Gray was married on April 30, the doctor’s estimate of the conception date was as close as four days to the marriage date.
Although mathematical numbers are necessarily used in estimating dates of conception and of projected delivery, mathematical certainty cannot be attributed to these estimates, which are based on normal patterns. There is no certainty that a normal pattern will occur in the conception, gestation, and birth of a particular child. Here, the trial judge erred in attributing mathematical certainty to estimates of a concep *545 tion date, which apparently was very close to the date of marriage. In my opinion the doctor’s estimated date of conception, made for the purpose of fixing an estimated delivery date in the future, does not establish the probability that the conception preceded the marriage. As a result of the trial court’s finding that the conception did precede the marriage, the mother’s supported oath (which otherwise may have been sufficient) was statutorily deemed disqualified as proof of paternity.
Paternity may be proved directly by proof of the admissions of the alleged father, C.C. art. 209(1) and (2). Paternity may also be proved inferentially by circumstances indicating the defendant’s fatherhood, if he lived in a state of concubinage with the mother in his house at the time of conception, C.C. art. 209(3), or if he cohabited with the mother out of his house, C.C. art. 210. However, the supported oath of the mother as to the latter circumstance is disqualified if she is reputed to be a woman of dissolute manners or if she had illicit intercourse with other men before or after the birth of the child.
The apparent purpose of the disqualifying provisions of C.C. art. 210 is to prevent a mother from choosing as the father of her illegitimate child any one of several persons with whom she had been intimate at the time of conception. Strong proof of illicit intercourse after birth implies the probability of cohabitation with others at the time of conception. However, the very weak circumstantial evidence of premarital intercourse in the present case does not, standing alone, justify an inference of cohabitation with others at the time of conception, so as to disqualify the mother’s supported oath.
Since the trial judge could have dismissed the mother’s suit on the failure of her oath, without going into the issue of her disqualification based on an unlawful connection with Jimmy Gray, it is perhaps significant that he did not flatly reject her oath. However, I would be reluctant to determine on a written record an issue based almost entirely on credibility. In my opinion the cause of justice would be served best by remanding the case for a credibility determination of the mother’s oath by the trial judge.

. Mrs. Gray testified that she and her husband had been engaged for five months and did not have intercourse prior to their marriage.

. Mrs. Gray testfied that she had a menstrual period in the middle or toward the beginning of April.